IN THE UNITED STATES DISTRICT COURT

OF THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| TARA FOSTER, ET AL. § | | |
| Plaintiff § | | |
| § | | |
| V. § | No. 5:08CV71 | |
| § | | |
| MCLEOD INDEPENDENT § | | |
| SCHOOL DISTRICT, ET AL. § | | |
| Defendants § | | |

## MEMORANDUM ORDER

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Plaintiffs filed objections to the Report and Recommendation. The Court conducted a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

Plaintiffs are Tara Foster and her parents. Defendants are the McLeod Independent School District, Superintendent Cathy May, McLeod High School Principal Karen Tidwell, and former McLeod agricultural teacher Sherman Hammons. Tara Foster asserts that she was raped by Hammons, who was formerly employed by the McLeod Independent School District.

Superintendent Tidwell and Principal May, in their official capacity, and McLeod I.S.D., moved for summary judgment on Plaintiffs claims for (1) deprivation of a liberty interest under the Fourteenth Amendment; (2) unreasonable search and seizure under the Fourth Amendment; and (3)

invasion of privacy. In a separate motion, Superintendent May and Principal Tidwell also moved for summary judgment in their individual capacity on grounds of qualified immunity.

**PLAINTIFFS' OBJECTIONS**

In her Report and Recommendation dated January 9, 2009, the Magistrate Judge recommended Defendants' motions for summary judgment be granted. Plaintiffs filed objections to the Magistrate Judge's Report and Recommendation. Specifically, Plaintiffs assert they have presented sufficient evidence of "deliberate indifference" to withstand summary judgment. Plaintiffs contend McLeod Independent School District renewed Hammons' contract after it had knowledge of Hammons' misconduct in 2006, creating a fact issue that the district's actual policies and customs are constitutionally deficient to withstand summary judgment. Finally, Plaintiffs argue the Magistrate Judge misapplied the "deliberate indifference" standard in this case, asserting the district did not need to knew there was a risk of harm to a specific person, only that there was a risk of harm.

***DE NOVO* REVIEW**

Plaintiffs do not specifically object to the Magistrate Judge's finding that Plaintiffs' claims against Superintendent May and Principal Tidwell, in their official capacity, are in reality claims against McLeod I.S.D, and that the official capacity claims against May and Tidwell should be dismissed as duplicative. In addition, Plaintiffs do not specifically object to the Magistrate Judge's finding that Plaintiffs' Fourth Amendment claim is without merit. The Court agrees with the Magistrate Judge that Plaintiffs' Fourteenth Amendment claims against Superintendent May and Principal Tidwell, in their official capacity, should be dismissed as duplicative and that Plaintiffs' Fourth Amendment claim is without merit.

Turning to Plaintiffs' objections to the Report and Recommendation, the Court agrees with

the Magistrate Judge that the evidence is insufficient to show McLeod I.S.D. acted with deliberate indifference towards Tara Foster's constitutional rights. The Court is not convinced the Magistrate Judge misapplied the appropriate law.

In *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994), the Fifth Circuit Court of Appeals considered a § 1983 claim against a school district and its supervisory employees based on sexual abuse of a student by a high school teacher. The Fifth Circuit recognized that "schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right." *Id*. at 445. The fifth Circuit further stated that "school officials can be held liable for supervisory failures that result in molestation of a schoolchild if those failures manifest a deliberate indifference to the constitutional rights of that child." *Id*.

The Fifth Circuit in *Doe* did not directly address the scope of liability under § 1983 for actions of the school district. Rather, the Fifth Circuit addressed the scope of individual liability of school officials who are sued in their supervisory capacity under § 1983. According to the Fifth Circuit:

> A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student.

*Id*. at 454. The Fifth Circuit speculated in *Doe* that it could "foresee many good faith but ineffective responses that might satisfy a school official's obligation in these situations." *Id*. at 457 n. 12.

In *Rivera v. Houston Indep. School Dist.*, 349 F.3d 244 (5th Cir. 2003), the Fifth Circuit held that under Texas law, the Board of Trustees, not the Board in combination with any subordinate school district officials (*i.e.* teachers, principals, and superintendents), is the "official policymaker" for purposes of § 1983 liability. *Id.* at 247-48. Although principals and superintendents might have "decision-making authority" under the Texas Education Code, they do not have "the policymaking authority required to sustain liability under § 1983." See *id.* at 248. The Fifth Circuit stated that "the Board is the one and only policymaker for HISD," and the Board has not delegated any policymaking authority to subordinate school district personnel. See *id.* ("[T]his delegation of decision-making authority [to the principal] does not negate the fact that both under Texas law, and the Board's own policies, final policymaking authority lies exclusively with the Board."). *Id.* Plaintiffs cannot impute the actions of principals and superintendents to the District for purposes of § 1983 liability. *Brittany B. v. Martinez*, 494 F.Supp.2dd 534, 541 (W.D. Tex. 2007).

For purposes of the § 1983 claim against McLeod Independent School District, "official policy" is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Here, Plaintiffs have not presented evidence of a formal "policy statement" of ignoring or condoning sexual abuse of students that was "officially adopted and promulgated" by the board.

Apparently relying on the second definition of "official policy," Plaintiffs assert McLeod I.S.D. renewed Hammons' contract after it had knowledge of Hammons' misconduct in 2006, giving the school district notice of a risk of harm to the students.

Defendants' expert, Dr. Moses, specifically addressed issues concerning complaints related to Hammons that occurred during the 2006-2007 school year. Dr. Moses notes that Principal Tidwell immediately initiated an investigation into the concerns raised. She specifically looked into allegations that Hammons had kissed another student during a break. Both Hammons and the student were questioned by Principal Tidwell regarding this incident and denied that it took place. The student told Principal Tidwell that she did not feel threatened, and Principal Tidwell had no proof otherwise. Principal Tidwell also investigated the allegation that Hammons had given relationship advice to two students and was very clear in her instructions to Hammons. She gave him directives with regard to his relationship with students and was told to refer those who had personal issues to the counselor. Hammons was given other specific instructions with regard to his contact with students. Dr. Moses offers the opinion that in his experience as a school administrator, the actions by Principal Tidwell were completely professional and within commonly accepted practice.

Dr. Moses offers the opinion that there is no evidence to suggest that sexual abuse or sexual harassment would be committed by Hammons against Tara Foster or any other student, and that there is nothing to suggest that any teacher misconduct was tolerated by Superintendent May or Principal Tidwell. Dr. Moses states that school administrators cannot assume a teacher has an inappropriate relationship with a student based on rumor or innuendo; school administrators can only review and investigate situations. According to Dr. Moses, when the students involved deny any involvement or indicate that they do not feel threatened in any way, school administrators must act

carefully.

There is no evidence that the district knew of any inappropriate relationship between Hammons and any other student when it renewed his contract or at any time prior to February 7, 2008, when Tara reported the alleged rape to Principal Tidwell. Plaintiffs fail to show a pattern of reports of misconduct of a sexual nature, known to the district, or that anyone in the district had sufficient notice, through the evidence available at the time, or should have known that an inappropriate sexual relationship was occurring between Tara Foster and Hammons. There is evidence of uncorroborated rumors of Hammons having prior relationships with other students, but Plaintiffs present no evidence that any employee or official at the school knew of any inappropriate relationship involving Hammons and failed to take appropriate action.

Even if Plaintiffs could show otherwise, this does not demonstrate that the district was "deliberately indifferent" to the constitutional rights of Tara Foster. Tara testified that she does not believe school officials had any knowledge of an ongoing relationship between her and Hammons before the date she walked into Principal Tidwell's office and made the allegation of rape. (Foster Depo. at pg. 21, ln 23 - pg. 23, ln. 7). Dr. Moses notes that Superintendent May and Principal Tidwell had no way of knowing that an inappropriate relationship could exist between Hammons and Tara Foster, or any other student for that matter.

In order to prevail on her § 1983 claim against McLeod I.S.D., Plaintiffs must show that Tara's constitutional rights were violated through the execution of an official policy or custom properly attributable to the school board itself. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir.1995), *cert. denied*, 517 U.S. 1191 (1996). It is not enough for Plaintiffs merely to identify conduct properly attributable to the district; they must also demonstrate that, through its deliberate

conduct, the custom or policy of the district was the "moving force" behind the injuries alleged. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 216 (5th Cir.1998); *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).

There is not sufficient evidence to create a fact issue that Defendants demonstrated deliberate indifference toward the constitutional rights of Tara Foster by failing to take action that was obviously necessary to prevent or stop the abuse. Not only does the evidence reveal Defendants' appropriate actions upon learning of the allegations, but the evidence also reveals that Defendants' actions prior to the allegations of sexual assault raised by Foster were appropriate and satisfied any duty owed to Tara Foster. Hammons applied for and was initially hired by the McLeod I.S.D. for the 2006-2007 school year. He was interviewed by Principal Tidwell, and all references and background checks were found to be in order. Hammons was instructed that, among other things, teachers and students were not to have personal relationships of an intimate nature with any student. He was assigned a mentor to provide guidance. Principal Tidwell also counseled him on occasion and provided an avenue for him to ask questions and seek guidance on any issues that might arise in his duties as an educator.

Here, deliberate indifference involves the McLeod school board authorizing, tolerating, or condoning sexual abuse of students by teachers. *See Gonzalez v. Ysleta Indep. School Dist.*, 996 F.2d 745, 761 (5th Cir. 1993)("A supervisory defendant 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.'")(*quoting Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)). The evidence in this case is not sufficient as a matter of law to establish that McLeod I.S.D. was deliberately indifferent to the welfare of students

or of Tara Foster.

Plaintiffs also fail to establish a basis for imposing liability on Superintendent May or Principal Tidwell in their individual capacity. Dr. Moses opines that Superintendent May and Principal Tidwell had no way of knowing that an inappropriate relationship could exist between Hammons and Tara Foster, or any other student. Dr. Moses states there was nothing to suggest that a significant threat was posed to any student. Further, he states that in his professional experience as a school administrator and the supervisor of many other school administrators, the actions of Superintendent May and Principal Tidwell are in keeping with common practice and a standard level of care for all students. Finally, Dr. Moses concludes that there is no indication Superintendent May and/or Principal Tidwell acted with deliberate indifference in this unfortunate matter. Plaintiffs have not shown that May and Tidwell's conduct manifested deliberate indifference to the constitutional rights of Tara Foster. May and Tidwell's motion for summary judgment, in their individual capacity, should be granted based on their qualified immunity defense.

In sum, Plaintiffs' objections are without merit. The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Therefore, the Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Accordingly, it is hereby

**ORDERED** that Defendants May and Tidwell, in their Official Capacity, and McLeod Independent School District's Motion for Summary Judgment (Dkt. No. 35) and Motion for Summary Judgment of Defendants May and Tidwell, in their Individual Capacity (Dkt. No. 36) are **GRANTED**. It is further

**ORDERED** that Plaintiffs' above-entitled and numbered cause of action is **DISMISSED**

**WITH PREJUDICE**.

**SIGNED this 23rd day of January, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE